UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RADIAH S. THOMPSON,<br><br>        Plaintiff,<br><br>   v.<br><br>THE PERMANENTE MEDICAL GROUP, INC.,<br><br>        Defendant._____/ | No. C-12-1301 EMC<br><br>**ORDER GRANTING DEFENDANT UNITED HEALTHCARE WORKERS-WEST'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**(Docket No. 38)** |

## I. INTRODUCTION

Plaintiff Radiah S. Thompson, who is pro se, filed this case under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq.* She alleges that her union, United Healthcare Workers-West ("UHW" or "the union"), breached its duty of fair representation in connection with a grievance she filed after she was terminated. She also alleges violations of the collective bargaining agreement ("CBA") by her former employer, the Permanente Medical Group ("TPMG"). The UHW has filed a motion to dismiss the First Amended Complaint ("FAC") for failure to state a claim. Docket No. 38.

This Court previously granted TPMG's motion to dismiss Plaintiff's claims against TPMG because she had to exhaust administrative remedies and the claims were untimely. The parties stipulated to extend Plaintiff's time to file an amended complaint until this Court has ruled on the instant motion.

## II.   FACTUAL & PROCEDURAL BACKGROUND

As this is a motion to dismiss, the facts below are drawn from Plaintiff's first amended complaint, and construed in the light most favorable to her.

Plaintiff was a ten year employee of TPMG with no history of discipline. FAC ¶ 5c. She began working for TPMG on August 28, 1999. FAC at 5. In 2002, she became an employee at TPMG's AACC call center. FAC at 5, Ex. 1 at 2.. Between 2002 and 2009, Plaintiff had an ongoing dispute with TPMG about her rights under the Family Medical Leave Act and California's Fair Employment and Housing Act. FAC at 5, Ex. 3. Plaintiff has diabetes and high blood pressure, and had missed work for health reasons on a number of occasions. FAC Ex. 2. At the time of her termination, she had just "obtained coverage" under both Acts.[1] FAC at 5.

On the ten year anniversary of her employment with TPMG, she was terminated. FAC at 5. She was terminated for an unspecified "policy error," though no patients were harmed and no patient information was compromised. *Id.* Plaintiff alleges that she was terminated in retaliation for her chronic health problems, and that no just cause was given for her termination. FAC at 4. In September 2009, Plaintiff filed a grievance with the UHW. FAC at 5. At that time, the UHW advised her that her grievance was meritorious and that termination was excessive discipline for the infraction that she had committed. *Id.*

Though Plaintiff does not discuss the UHW's actions in late 2009 in the body of her complaint, she attaches a document indicating that the union did take some initial steps to pursue her grievance. FAC Ex. 1 at 2. On September 16, 2009, a "step two" meeting took place concerning Plaintiff's grievance. *Id.* TPMG filed a response to the grievance on October 5, 2009. *Id.* A "step three" meeting occurred on December 9, 2009, and TPMG issued a formal response on December 23, 2009. *Id.* Plaintiff makes no specific allegations about what occurred at these meetings, and none of the attachments to her complaint provide further detail. At the hearing on this motion,

---

[1] The documents Plaintiff attaches indicate only that she had requested accommodations for her disability and provided documentation from her physician, not that TPMG had actually granted Plaintiff's request. FAC Ex. 3.

2

Plaintiff acknowledged that the UHW represented her at these meetings, and did not raise any concerns about the adequacy of the UHW's representation of her grievance at those meetings.

After the step three meeting, during 2010 and for the next two years, Plaintiff has made numerous unsuccessful attempts obtain information from the UHW on the status of her grievance. FAC at 4-5. From the parties' representations at the hearing on this motion, it would appear that much of this delay is attributable to the fact that the arbitrator who would have ordinarily handled such cases passed away during this time period, creating a substantial backlog of grievances waiting for arbitration.

In June 2010, a UHW representative promised her that she would get her job back. FAC at 5. Instead of being offered her old job, however, she was asked to return without pay.[2] *Id.* Plaintiff declined, stating that Defendants needed to "recognize breaches." *Id.*

After June 2010, Plaintiff continued to request updates on the status of her grievance from her union representatives, but was "put off." FAC at 4. She attaches to her complaint numerous emails from December 2011 in which she requested updated information about the status of her grievance from Hortencia Armendáriz of the UHW.[3] FAC Ex. 4. In these emails, Plaintiff told Ms. Armendáriz that she had been trying to contact her appointed union representatives since her termination in 2009, but that she had not yet been able to arrange an in-person meeting with them. FAC Ex. 4 at 3. She stated that she had records from her numerous attempts to contact several different union representatives for information on her grievance, and that she had been consistently given excuses or told to wait for some future date when the union representative told her they would have more information. FAC Ex. 4 at 3-4. Plaintiff had apparently requested information on how to terminate the union's representation so that she could represent herself, but was told that she had to go through the channels of union representation before she could do so. FAC Ex. 4 at 5.

---

[2] It is possible that Plaintiff means that she was asked to return without backpay, but in the complaint she says simply that she was asked if she "would return without pay." FAC at 5. At the hearing on this motion, Plaintiff stated that she was never formally offered her old position.

[3] Ms. Armendáriz's email signature indicates only that she works for the UHW's Kaiser Division; it does not give a specific title.

3

In response to these complaints, Ms. Armendáriz merely told Plaintiff that she had been in touch with one of the union representatives and directed her to follow up with Plaintiff. *Id.* At some point, a UHW supervisor informed Plaintiff that she would get an update on her grievance in January 2012. FAC at 5. Plaintiff never ultimately heard from the union, however, and instead filed the case at bar on March 15, 2012. FAC at 5.

Plaintiff alleges that the UHW breached its duty because it "'arbitrarily' ignored meritorious grievance [sic] and processed it in a perfunctory fashion." FAC at 4. Despite the UHW's statements that the grievance was meritorious, Plaintiff's many attempts to get updates on the status of her grievance were ignored. *Id.* Finally, in a letter dated April 24, 2012, the UHW withdrew Plaintiff's grievance without explanation. FAC Ex. 1. Plaintiff alleges that she did not actually receive this letter until May 21, 2012. FAC at 6.

Plaintiff also apparently filed a grievance with the NLRB. FAC at 6. Lucile Rozen of the NLRB told her that during those proceedings, she would continue to be represented by the UHW. FAC at 6. Though her grievance was initially set for arbitration before the NLRB on May 23, 2012, the UHW informed her that this arbitration was cancelled on May 18, 2012.[4] FAC at 4, 6. The UHW never provided a reason why it cancelled the grievance. FAC at 4, 6.

On June 8, 2012, Plaintiff filed another complaint with the NLRB. FAC at 6. At the hearing on this motion, Plaintiff represented that this complaint had been denied, and that it was not on appeal.

### III. DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). In deciding whether to dismiss, a court may consider only the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters of which the court may take judicial notice.

---

[4] It is not entirely clear whether this is separate from the UHW's withdrawal of her grievance in the April 24, 2012 letter.

4

*See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003) ("A court may ... consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."). On a motion to dismiss, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.2009). While "a complaint need not contain detailed factual allegations ... it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

Ordinarily, a pro se complaint will be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The pro se complaint will be dismissed only if it appears "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pena*, 976 F.2d at 471 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). As the Ninth Circuit has recently clarified, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*. While the standard is higher, our 'obligation' remains, 'where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). However, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.").

A. <u>Legal Standard for Breach of Duty of Fair Representation Claims</u>

Plaintiff brings suit against TPMG for breach of the terms of her CBA and against the UHW for breach of its fair duty of representation. This is a "hybrid" claim under the Labor Management Relations Act. *See DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 163-65 (1983) (describing such hybrid claims). The claim against the employer is brought under § 301 of the LMRA, which creates a federal right of action for breach of contracts between employers and labor organizations. 29 U.S.C. § 185. Normally, employees covered by a collective bargaining agreement (CBA) must utilize the grievance process therein to enforce rights thereunder rather than suing in court.

In that regard, the LMRA does not explicitly provide for a cause of action against a union for breach of duty of fair representation. However, courts have interpreted Section 9 of the LMRA, which provides that representatives selected by the majority of employees shall be their exclusive representatives for the purposes of collective bargaining, to create a duty of fair representation. *Simo v. Union of Needletrades*, 316 F.3d 974, 981 (9th Cir.2003) (interpreting 29 U.S.C. § 159(a)).

> As the exclusive bargaining representative of the workers, the union has "'a duty to exercise [its] power in their interest and behalf.'" "[A] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith.'" "The duty of fair representation is thus akin to the duty owed by other fiduciaries to their beneficiaries."

*Simo*, 316 F.3d at 981 (internal citations omitted).

As a formal matter, a claim against an employer under § 301 and a claim against a union for breach of the duty of fair representation are two separate causes of action. *DelCostello*, 462 U.S. 151, 164. "Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *Id.* at 164-65 (internal quotations omitted) (ellipsis in original). This is because as noted above, an employee is ordinarily bound by the outcome of grievance procedures outlined in the CBA according to the finality provisions in that agreement. *Id.* at 164. Normally, no judicial remedy lies – the grievance procedure under the CBA is the sole remedy. However, when a union has breached

6

its duty of fair representation during the grievance process, courts have held that it would work an "unacceptable injustice" for an employee to be bound by its outcome. *Id.* In such cases, an employee may bring suit against both the union and the employer. *Id.* Thus, the actual question here is whether the complaint states a claim that the union breached the duty of fair representation.

A union breaches its duty of fair representation when it acts in a way that is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Mere negligence on the part of the union does not constitute a breach of duty. *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985). Good faith errors in judgment do not constitute a breach of duty because "unions must retain wide discretion to act in what they perceive to be their members' best interests." *Id.* The Ninth Circuit has "emphasized that, because a union balances many collective and individual interests in deciding whether and to what extent it will pursue a particular grievance, courts should 'accord substantial deference' to a union's decisions regarding such matters." *Id.*; *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1273 (9th Cir. 1983). Courts "may decline to give a union the deference owed to an exercise of judgment only where union actions or inactions are 'so far outside a wide range of reasonableness that [they are] wholly irrational or arbitrary.'" *Beck v. United Food & Commercial Workers' Union*, 506 F.3d 874, 879 (9th Cir. 2007) (quoting *Airline Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991)).

"A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998). In attempting to clarify the line between mere negligence and arbitrary action that rises to the level of a breach of the union's duty, the court in *Peterson* noted that:

> There are some significant general principles that emerge from our previous decisions. In all cases in which we found a breach of the duty of fair representation based on a union's arbitrary conduct, it is clear that the union failed to perform a procedural or ministerial act, that the act in question did not require the exercise of judgment and that there was no rational and proper basis for the union's conduct. For example, we found a union acted arbitrarily where it failed to: (1) disclose to an employee its decision not to submit her grievance to arbitration when the employee was attempting to determine whether to accept or reject a settlement offer from her employer; (2) file a timely grievance after it had decided that the grievance was meritorious and should be filed; (3) consider individually the grievances of particular employees where the factual and legal differences among them were

7

> significant; or (4) permit employees to explain the events which led to their discharge before deciding not to submit their grievances to arbitration.

*Peterson*, 771 F.2d at 1254 (internal citations omitted). The Ninth Circuit has since noted that the categories of ministerial and discretionary acts outlined in *Peterson* "represent not absolute categories without relation to one another but opposing points on a continuum." *Peters v. Burlington Northern R. Co.*, 931 F.2d 534, 539 (9th Cir. 1990).

More specifically, a union's actions may constitute arbitrary conduct if it simply ignores a meritorious claim or gives it only perfunctory handling, if it fails to conduct even a minimal investigation of a grievance, or if its actions evince "reckless disregard" for the rights of the employee. *Peterson*, 771 F.2d at 1254. A union must conduct at least some minimal investigation of grievances brought to its attention. *Diaz v. Intern'l Longshore & Warehouse Union, Local 13*, 474 F.3d 1202, 1207 (9th Cir. 2007); *Tenorio v. NLRB*, 680 F.2d 598, 601 (9th Cir. 1982). Thus, while an employee does not have an absolute right to have his grievance taken to arbitration, a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion. *Vaca*, 386 U.S. at 191.

B.  <u>Plaintiff Failed to State a Claim for Breach of Duty of Fair Representation</u>

In her response, Plaintiff makes a number of arguments about the nature of the union's duty of fair representation, the definition of unfair labor practices, and how to calculate her damages and apportion them between Defendants. Pl.'s Opp. to Mot. to Dismiss at 2-6. For example, she cites to a case holding that the union has a duty to "act as a genuine representative to all the employees in the bargaining unit," and that any breach of Section 9 of the NLRA (governing representatives and elections) constitutes a breach of Section 7 (providing that employees have a right to organize), and thus constitutes an unfair labor practice under Section 8. *Hughes Tool Co.*, 104 NLRB 318, 319 (1953). The key question in this motion, however, is whether she has alleged sufficient facts to make out a claim for breach of the UHW's duty of fair representation so as to allow her to bring suit herein, not whether the employer or the union engaged in unfair labor practices. Similarly, her arguments about the calculation and apportionment of damages are not relevant to the issue the UHW raises in this motion.

Plaintiff offers little argument that the facts she alleges are sufficient to make out a claim for breach of the union's duty of representation. To this end, she largely repeats the conclusory allegations in her complaint that the union handled her grievance in an arbitrary and perfunctory manner. Pl.'s Opp. to Mot. to Dismiss at 3. Plaintiff also makes various allegations about how TPMG's conduct violates the NLRA. *Id.* While her allegations about TPMG's conduct may be relevant in other parts of her case, they are not central to the motion currently pending before the Court, except as they are relevant to show that the UHW breached its duty of fair representation to Plaintiff.

In addition to these conclusory allegations, however, Plaintiff does offer a few concrete and specific facts. Between the facts in her complaint and her statements at the hearing on this motion, it seems that Plaintiff is alleging that the UHW breached its duty of fair representation in two ways. First, she alleges that the UHW breached its duty by failing to take her case to arbitration, even though it had initially told her that her grievance was meritorious, and on several subsequent occasions told her that it would take her grievance to arbitration. Second, she alleges that the UHW breached its duty by failing to adequately communicate with her between the end of 2009, and the spring of 2012, when it finally abandoned her grievance.

1.   <u>Abandonment of Grievance</u>

To the degree that Plaintiff is basing her claim simply on the UHW's decision to abandon her grievance under the CBA or before the NLRB, her complaint does not state a claim for breach of the duty of fair representation. Unions have wide discretion in how they choose to handle grievances, and as noted above, employees have no absolute right to have their grievance taken to arbitration. *Vaca*, 386 U.S. at 191; *Peterson*, 771 F.2d at 1253. A union is generally not liable for breach of its duty of fair representation unless its actions are "so far outside a wide range of reasonableness that [they are] wholly irrational or arbitrary.'" *Beck*, 506 F.3d at 879.

A union breach its duty, however, if it simply ignores a meritorious grievance, or if the union processes the grievance in a perfunctory manner. *Vaca*, 386 U.S. at 191. Here, a union representative told Plaintiff shortly after she was fired that her grievance was meritorious. From the facts expressly alleged in the complaint itself, it would appear that the UHW took no further action

9

on the grievance at that point. This could be sufficient to allege a breach of the UHW's duty, as it would appear that under those facts the union ignored a grievance that it had admitted was meritorious.

However, Plaintiff attaches to her complaint a document indicating that the UHW in fact took a number of actions to pursue Plaintiff's grievance in late 2009. FAC Ex. 1 at 2. The UHW filed a "step two" grievance under the CBA. *Id.* The UHW then represented Plaintiff at a step two meeting in September 2009, and a step three meeting in December 2009. *Id.* Plaintiff does not allege that she was not informed of these meetings. Nor does she allege that the UHW's actions or inaction at those meetings somehow constituted a breach of its duty. It also appears that the UHW attempted to negotiate her job back and may have succeeded but with the condition that Plaintiff give up her claim of back pay. FAC at 5. Thus, it would appear that the UHW did not simply ignore Plaintiff's complaints about her termination, and that it took a number of steps to pursue her grievance.

The fact that the union later re-evaluated Plaintiff's grievance and evidently determined not to take it to arbitration does not itself constitute a breach of duty. "[A]s Vaca v. Sipes, . . . makes clear, a union may decide not to initiate a grievance at a member's request, *and also may choose not to pursue a member's grievance to the end of the procedure*, if its decision is made in good faith, based upon an evaluation of the merits of the employee's claim and of the most advantageous expenditure of the union's energies and resources." *Local 13, Int'l Longshoremen's & Warehousemen's Union v. Pac. Mar. Ass'n*, 441 F.2d 1061, 1069 n.11 (9th Cir. 1971) (emphasis added). As Plaintiff has not alleged sufficient facts to establish that the union's decision not to pursue her grievance through arbitration was made in bad faith, the mere fact that the UHW determined not to pursue her grievance all the way to arbitration after taking the grievance through step three does not establish that the union acted outside the bounds of its broad discretion in the handling of Plaintiff's grievance. *See Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985) ("because a union balances many collective and individual interests in deciding whether and to what extent it will pursue a particular grievance, courts should 'accord substantial deference' to a union's decisions regarding such matters.").

### 2. Failure to Communicate

Plaintiff also alleges that the UHW breached its duty by failing to adequately respond to her repeated requests for more information on the status of her grievance throughout 2010 and 2011. FAC 4-5. Plaintiff attaches a series of emails that she sent to UHW employee Hortencia Armendáriz in December 2011. FAC Ex. 4. In those emails she indicates she had been attempting to contact various union representatives since 2009. Though she had been successful in contacting them via phone, they provided only excuses for why they had no information on her grievance, and indicated further delays before she could receive more information. She had been unsuccessful in securing an in-person meeting with any union representative, and had been told that she was not permitted to represent herself in the grievance process. Ms. Armendáriz did not respond to Plaintiff's concerns other than to indicate that she had spoken to one of the union representatives and that the representative would be getting in contact with Plaintiff.

The Ninth Circuit has held that a union's negligent failure to communicate with a grievant may constitute a breach of its duty if the union acts in reckless disregard for the rights of the employee and if the employee is prejudiced by the failure in some way. *Robesky v. Qantas Empire Airways Ltd.*, 573 F.2d 1082, 1091 (9th Cir. 1978). In *Robesky*, for example, a breach of fiduciary duty was found where the union failed to tell the plaintiff that her grievance would not be taken to arbitration, and this led her to reject a settlement offer which she would otherwise have accepted. *Id.* at 1085.

In this case, there does not seem to have been a complete failure to communicate and a reckless disregard of Plaintiff's rights. Plaintiff was in contact with union representatives via email and telephone, though she had been unable to arrange an in person meeting. While the union did not provide much information, there was communication with Plaintiff. Though the grievance process seems to have moved painfully slowly in 2010 and 2011, Plaintiff does not allege that UHW disregarded her rights by allowing any deadlines to pass or by failing to take advantage of opportunities to successfully resolve her grievance during this time. As noted above, it appears that the delay in moving to arbitration was due to the death of an arbitrator and backlog of cases.

11

In any event, Plaintiff does not allege that she suffered any legally cognizable prejudice as a result of the union's delay or inadequate communication, prejudice required to establish a breach. *Robesky*, 573 F.2d at 1091. She does not allege she was ultimately impaired in her ability to pursue her grievance. The early steps of grieving the termination took place in late 2009. The UHW did not abandon her grievance until mid-2012; this indicates that Plaintiff missed no deadline to advance to the next step in the grievance process in the intervening two and a half years. Though the UHW seems to have been painfully slow in processing Plaintiff's grievance after its initial actions in late 2009, Plaintiff has not alleged any harm beyond mere delay.

While this delay and minimal communication was undoubtedly extremely frustrating for Plaintiff, the Ninth Circuit has held that a union's negligent delay in bringing a grievance to arbitration does not constitute a breach of its duty of fair representation. *Dente v. Int'l Org. of Masters, Mates & Pilots, Local 90*, 492 F.2d 10, 12 (9th Cir. 1973). In *Dente*, the arbitration of the plaintiff's grievance was delayed for almost a year because his union was in the process of re-negotiating its contract with the employer. *Id.* at 11. The plaintiff brought a suit for breach of duty of fair representation against the union, alleging that he had been deprived of wages during the delay. *Id.* The court held that the union's delay was at worst negligent, and that "whatever can be said of the union's delay in processing the grievance and moving to arbitration, it was not that kind of 'arbitrary abuse' giving rise to damages under section 301." *Id.* at 12.

The allegations do not establish that the UHW breached its duty of fair representation based on a failure to communicate.

## IV.    CONCLUSION

For the foregoing reasons, Defendant UHW's motion to dismiss is **GRANTED** with leave to amend. If Plaintiff is able to allege sufficient facts to establish a breach of the duty of fair representation under the legal standard set forth above, Plaintiff is directed to file an amended

///
///
///
///

12

complaint no later than December 31, 2012.  Plaintiff is forewarned, however, that any further complaint must comply with Rule 11 of the Federal Rules of Civil Procedure, and that the Court is not inclined to grant any further leave to amend.

This order disposes of Docket No. 38.

IT IS SO ORDERED.

Dated:  December 3, 2012

_____
EDWARD M. CHEN
United States District Judge